IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FREDDIE PERALES

    Plaintiff,

vs.                                                     No. CV 07-908 JAP/RLP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Plaintiff,

## UNITED STATES MAGISTRATE JUDGE'S
## ANALYSIS AND RECOMMENDED DISPOSITION[1]

This is an action for review of the final decision of the Commissioner of Social Security terminating Plaintiff's disability income benefits (DIB) and supplemental security income payments (SSI). The matter presently before the court is Plaintiff's Motion to Reverse and Remand for a Rehearing (Docket No. 18). The matter has been fully briefed by the parties and has been referred to this court for analysis and recommendation.

### Standard of Review

The Social Security Act (the Act) provides that final decisions of the Commissioner shall be subject to judicial review. 42 U.S.C. §§ 405(g). "(This court's) review is to determine whether the Commissioner applied the correct legal standards and whether his decision is supported by substantial evidence." Oldham v. Astrue, 509 F.3d 1254, 1256

---

[1] Pursuant to 28 U.S.C. §636(b)(1), within ten (10) days after a party is served with a copy of this Analysis and Recommended Disposition, either party may file written objections to such pro-posed findings and recommendation. A party must file any objections within the ten (10) day period if that party seeks appellate review of the proposed findings and recommendations. Failure to timely file objections with the court will be deemed a waiver of appellate review. Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir.2004).

(10th Cir.2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004) (quotation omitted). "The agency's failure to apply correct legal standards, or show us it has done so, is ... grounds for reversal." Id. Finally, it is not this court's job to reweigh the evidence or substitute its discretion for that of the Commissioner. My task is simply to review the Commissioner's legal analysis and examine the record to ensure that the evidence supporting the agency's decision is substantial. See id.

## Background

Plaintiff was born on October 2, 1968. (Tr. 68). He completed the 11th grade [2] and can read and write English. (Tr. 55, 86). His past relevant work experience has been as a restaurant cook. (Tr. 87, 344). He last worked in July of 2001. (Tr. 87). Plaintiff applied for DIB and SSI in 2003. He was found disabled at step three of the sequential evaluation process based on cirrhosis of the liver and portal hypertension which met the medical standards for Listing §5.05C.[3] (Tr. 33-34, 39). An agency physician reviewing the medical chart recommended that Plaintiff be reevaluated in one year because of the paucity of findings on physical examination. In November 2005, the Social Security Administration determined that Plaintiff's disability had ceased, citing medical evidence that he no longer met Listing §5.05C. (Tr. 35-36, 41, 259). Plaintiff sought reconsideration, contending that

---

[2] Plaintiff testified that he was in special education classes from the 6th grade on, and was told this was because he was "real active." (Tr. 317, 332). No claim to disability is made based upon Plaintiff's mental abilities.

[3] Chronic liver disease with a serum bilirubin of 2.5 mg. per deciliter (100mb.) or greater persisting on repeated examinations for at least 5 months.

he was unable to stand for long periods and experienced dizziness, fatigue (Tr. 44), headache and problems with his knee and stomach. (Tr. 129). The cessation determination was affirmed, (Tr. 37-38, 242-247, 49-58). Thereafter Plaintiff sought review by an Administrative Law Judge ("ALJ" herein).

## Medical Evidence

Plaintiff was found disabled under Listing §5.05C in an agency determination dated June 16, 2004. (Tr. 1, 33-34, 39-40). His liver disease was medically monitored, and as of February 4, 2005, liver function studies were normal except for alkaline phosphatase, which is not a factor considered under Listing §5.05C. (Tr. 259). Plaintiff's next follow-up visit for assessment of his liver occurred on August 1, 2005. (Tr. 259). At that time he was "feeling well." Additional lab studies were ordered. Although the results of these studies do not appear in the administrative record, there is no mention of abnormal lab results or worsening liver disease in any subsequent medical record.

Plaintiff was treated for a painful right shoulder diagnosed as impingement syndrome in 2004 (Tr. 265) and back strain in 2005 (Tr. 262). These conditions resolved. He takes eye drops for glaucoma. (Tr. 259). Glaucoma affects his night vision, but does not otherwise cause any problems. (Tr. 321, 54). He has hypertension and peptic ulcer disease which are controlled by medication. (Tr. 259, 54, 265-266).

Plaintiff developed progressive left knee pain. MRI studies obtained in March 2006 confirmed a tear of the medial aspect of the medial meniscus and narrowing of the joint space consistent with degenerative joint disease. (Tr. 257-258). Plaintiff was evaluated by Kevin Regan, a physician's assistant on April 10, 2006. Mr. Regan documented Plaintiff's

pain complaints and physical findings, discussed options for treatment including steroid and Synvisc injections[4], anti-inflammatory medication and surgery, and referred Plaintiff to an orthopedic surgeon. (Tr. 282-283).

Plaintiff was evaluated on May 8, 2006 by orthopedic surgeon Damen Sacoman, M.D. At that time he complained of left knee pain, but stated that he could walk two-three blocks without the use of an assistive device. Following examination and review of radiological reports, Dr. Sacoman ordered for Synvisc injections and physical therapy for quadriceps strengthening and stretching. (Tr. 280-281). Plaintiff received the Synvisc injections in June 2006 but they did not relieve his pain. (Tr. 277-279). Dr. Sacoman advised giving the injections more time to work and prescribed use of a brace. (Tr. 277). Plaintiff's knee pain had not significantly improved by September 29, 2006. Dr. Sacoman scheduled arthroscopic examination and treatment, stating that this surgery would be of limited value, and that Plaintiff would likely need knee replacement surgery in the near future. (Tr. 276). Surgery was performed on November 2, 2006.[5] (Tr. 273).

A clinic progress note prepared by Mr. Regan dated November 10, 2006, one week after surgery, documented moderate effusion of the knee, and plans to use a wedge in this shoe and administer additional Synvisc injections. (Tr. 273). On February 7, 2007, Mr.

---

[4]Synvisc is used to relieve knee pain due to osteoarthritis. It is for patients who do not get enough relief from simple painkillers such as acetaminophen, or from exercise and physical therapy. www.synvisc.com.

[5]Surgery indicated grade II- III chondromalacia (degeneration or damage of the cartilage underneath the knee cap) on 20-30% of the patello-femoral joint, and 30% full-thickness exposure of the subchondral bone involving about 30% of the femur and tibial plateau. (Tr. 273).

Regan prepared a "return to work status" form, stating that Plaintiff had "chronic knee pain and may have a hard time sitting for long period(s) of time, secondary to stiffness."[6] (Tr. 271).

Plaintiff's hearing before an ALJ was conducted on March 6, 2007. During that hearing, Plaintiff's counsel informed the ALJ that Plaintiff had an appointment to see Dr. Sacoman in two weeks. (Tr. 317). The ALJ left the record open to permit Plaintiff to provide a record of this visit. (Tr. 352). No records were provided.

### The ALJ's Decision

The ALJ's written decision is dated May 17, 2007. The ALJ analyzed Plaintiff's claims under the evaluation process applicable to benefit termination cases. 20 C.F.R. 404.1594(f). The ALJ found that:

- Plaintiff has medically determinable impairments consisting of cirrhosis of the liver, obesity[7], osteoarthritis of the left knee, peptic ulcer disease and hypertension.

- None of these impairments alone or in combination met the criteria for a listed impairment.

- Medical studies demonstrate a decrease in the severity of Plaintiff's liver disease, signifying medical improvement related to his ability to work.

- Plaintiff's impairments as of November 1, 2005 continued to be "severe."

- Plaintiff has the residual functional capacity for a limited range of sedentary work:

---

[6]Plaintiff obtained this form from Mr. Regan in order to be excused from jury duty. (Tr. 146-147, 314).

[7]Plaintiff is 5'6" tall, and weighs in excess of 250 lbs. (Tr. 310, 261, 259, 243).

5

> Work which requires lifting and/or carrying no more than 10 lbs. occasionally and less than 10 lbs. frequently, standing and/or walking no more than 2 hours during an 8 hour workday, sitting for about 6 hours during an eight hour work day with standard breaks, pushing and pulling within the lifting and carrying capacity, and postural movements (climbing, balancing, stooping, kneeling, crouching and crawling) no more than occasionally, and allows the option to sit or stand at will.

- Plaintiff's statements concerning the intensity, persistence and limited effects of his symptoms is not entirely credible.

- Plaintiff is not able to return to his past relevant work.

- Based on his age, education, past work experience and residual functional capacity, Plaintiff is able to perform a significant number of jobs in the national economy; specifically, the jobs of appointment/reception clerk, order clerk and telephone information clerk.

- Plaintiff's disability ended as of November 1, 2005.

## Issues on Appeal

Plaintiff concedes that his liver impairment has improved (Docket No. 18, p. 4), and does not argue that he qualifies for continuation of disabled status based on Listing §5.05C. He contends that in assessing his knee impairment, the ALJ made the following errors that require remand for a rehearing:

I.  The ALJ failed to support his residual functional capacity assessment with substantial evidence and failed to apply correct legal standards in that assessment.

II. The opinion of the Vocational expert contained error, preventing that opinion

    from serving as substantial evidence.

 III. The ALJ failed to support his credibility assessment with substantial evidence and failed to apply correct legal standards in making that assessment.

Analysis

I. <u>Whether the ALJ's RFC assessment is supported by substantial evidence and the application of correct legal principles.</u>

Residual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations. See 20 C.F.R. §§ 404.1545 (a), (b), (c); 416.945(a), (b), (c). The ALJ found that Plaintiff had the RFC for sedentary work that permitted sitting or standing at will. The ALJ noted that at the time he was found disabled based as a result of liver disease, Plaintiff's physical examination was relatively normal,[8] that after he developed his knee problem Dr. Sacoman had not indicated that Plaintiff had any specific functional limitations and that the functional limitations assigned by Mr. Regan, the physician's assistant, would be accommodated by limiting Plaintiff to sedentary work that allows the option to sit or stand at will. In addition, the ALJ noted that as of May 8, 2005, Plaintiff stated he could walk two-three blocks without assistance (Tr. 18), commented on Plaintiff's post-operative course[9], and noted that there was no medical evidence post-dating his surgery that indicated that he needed an

---

  [8]Tr. 17, referring to: Tr. 224-226, physical examination by consulting physician G.T. Davis, M.D. dated May 2004 and Tr. 232-233, report of Yo-Chen Lee, reviewing agency physician dated June 2004.

  [9]The ALJ noted that at his post operative visit on November 10, 2006, Plaintiff was in no acute distress, his surgical wounds were healing, and he was prescribed a lateral wedge for his shoe and another course of Synvisc injections. (Tr. 17).

assistive device for walking. (Tr. 21). The ALJ also noted Plaintiff's testimony that when his knee gets stiff he gets up and walks around, and that the only reason he felt he could not perform sedentary work was because others on the job site wouldn't want to see him standing up and stretching all the time. (Tr. 20, referring to Tr. 323, 329).

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence, that it was error for the ALJ to rely on an absence of comment by Dr. Sacoman regarding functional capacity to support the finding, and that the ALJ was required to develop the record by recontacting Dr. Sacoman before using his report to support the RFC finding.

An ALJ is only required to recontact a treating physician if evidence presented is insufficient to reach a conclusion. 20 C.F.R. §§404.1512(e), 416.912(e), 404.1527(c)(3), 416.927(c)(3). Plaintiff's testimony and Mr. Regan's description of Plaintiff's functional limitation provide sufficient evidence to permit the ALJ to reach a conclusion regarding Plaintiff's RFC. Three months following arthroscopic surgery Mr. Regan stated that Plaintiff would have a hard time sitting for long periods due to stiffness. This is consistent with Plaintiff's description of his functional ability. The ALJ accepted this limitation and factored it into his RFC finding. Accordingly, the ALJ's RFC assessment was based on substantial evidence, and additional information was not required.

II.   Whether the VE's testimony provides substantial evidence of the existence of a sufficient number of jobs in the economy within Plaintiff's RFC.

The vocational expert ("VE" herein) testified that with his current RFC, Plaintiff could not perform his past relevant work. (Tr. 345). The ALJ asked her to assume a hypothetical individual with Plaintiff's vocational factors (age, education, and work history) who had the

RFC for sedentary work with the need to sit/stand at will. (Tr. 345-348). The VE identified three jobs that fell within this description:

>   (1) *Appointment clerk*; DOT 237.367-010, sedentary, semi-skilled (SVP-3), 1,088,400 positions available nationally, 50,000 positions available regionally (Tr. 346);

>   (2) *Order clerk, food and beverage*; DOT 209.567-014, sedentary, unskilled (SVP-2), 250,760 positions available nationally, 20,570 position available regionally (Tr. 346);

>   (3) *Telephone information clerk*; DOT 237.367-046, sedentary, unskilled (SVP-2), 1,088,400 positions available nationally, 108,400 positions available regionally (Tr. 350 as corrected by Tr. 153).

Of these jobs, the VE further testified that the sit/stand option would not decrease the positions available for appointment clerk or telephone information clerk, but that there would be a reduction for food and beverage order clerk, which she guessed would amount to 25%. (Tr. 349- 350).

Plaintiff challenges the ALJ's reliance on the testimony of the VE, contending that because the ALJ found that Plaintiff had no transferable skills, reliance on any job with an SVP of 3 is contrary to the evidence.

The court does not have to reach that issue. The unskilled jobs identified by the VE are substantial evidence of a significant number of jobs existing in the regional and national economies within Plaintiff's RFC. Trimiar v. Sullivan, 966 F.3d 1326, 1339 (10th Cir. 1992).

> III. <u>Whether the ALJ failed to support his credibility assessment with substantial evidence and the application of correct legal standards.</u>

After recounting in detail Plaintiff's testimony at the administrative hearing, the ALJ found that his statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible. (Tr. 22-23). In reviewing this determination, I must "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." <u>Casias v. Sec'y of Health & Human Serv's.</u>, 933 F.2d 799, 801 (10th Cir. 1991) . The ALJ's findings as to credibility "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings. <u>Huston v. Bowen</u>, 838 F.2d 1125, 1131, 1133 (footnote omitted) (10th Cir. 1988). The ALJ must "articulate specific reasons for questioning the claimant's credibility" where subjective pain testimony is critical. <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation omitted), <u>but see</u> <u>Qualls v. Apfel</u>, 206 F.3d 1368, 1372 (10th Cir. 2000) (<u>Kepler</u> does not require formalistic factor-by-factor recitation of the evidence).

The ALJ cited to the following in addressing the issue of credibility:

(A)  Plaintiff testified that he still had liver problems which caused daily gagging, nausea and dry heaves or vomiting of approximately two minute duration. (Tr. 320, 326, 331-332). The ALJ found that these complaints were not totally credible, citing to Plaintiff's normal lab studies and to his August 1, 2005 statement to his primary care physician that he was "feeling well." The ALJ also observed that symptoms lasting for two minutes a day would not affect Plaintiff's ability to work an 8 hours day. (Tr. 21).

10

(B) Plaintiff provided literature about the possible side effects of pain medication, to support his testimony that medication side affects would interfere with his ability to work. The ALJ noted that there was no evidence that Plaintiff ever complained of medication side effects, or that any medical provider adjusted his medications to alleviate side effects (Tr. 21).

(C) The ALJ stated that it would be reasonable to expect that Plaintiff's pain and functional limitations would have been decreased by his successful knee surgery. (Tr. 21). There is no direct medical evidence on this point, and Dr. Sacoman's pre-operative records indicated that the surgery would be of limited value an addressing Plaintiff's complaints. (Tr. 276).

(D) The ALJ stated that it would be unreasonable for Plaintiff to have continued to receive Synvisc injections if the relief they provided lasted only for two days. (Tr. 21). The record reflects that the initial series of Synvisc injections did not help. (Tr. 277). There is no direct medical evidence on whether injections administered after arthroscopic surgery were of any benefit.

(E) Plaintiff testified that he used a home-made walking cane. (Tr, 336). The ALJ noted that his orthopedic surgeon had not ordered an assistive device, nor indicated that one was medically necessary. (Tr. 21).

(F) The ALJ stated that he found Plaintiff's explanation for being unable to perform sedentary work to be vague and unconvincing. (Tr. 21). The testimony referred to is as follows:

Q.    . . . If there was a job that wouldn't require you to pick up more

      than about ten pounds or so, let you sit down most of the day, stand up when you needed to. Just with a little bit of standing and walking, not have to pick up anything. Do you think you could do a job like that?

A.     Right now? Probably be real hard.

Q.     Okay. What do you think - -

A.     It'd probably be real hard.

Q.     - - would make it hard?

A.     Well, getting up and standing all the time. And I don't think they would want me on their job site getting up and stretching all the time. As of now, I probably wouldn't probably be able to do something like that.

Q.     Okay.

A.     But - -

Q.     Okay. And I want your works. I want your thoughts on this.

A.     Yeah.

Q.     Other than that you say somebody at the work site might not want someone who stands up and stretches.

A.     That, plus it's discomforting just have to do, you know, certain things for your body to adjust them to make yourself feel good, to make your body feel good. And around other people, it's - - I try not to put them through that.

(Tr. 328-329).

    Although not all of the factors cited by the ALJ are fully supported by the record, I find that he did refer to specific and substantial reasons for discounting Plaintiff's credibility, and that his credibility determination should be upheld.

Recommended Disposition

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse and Remand for a rehearing be denied and that the Commissioner's decision terminating Plaintiff's benefits be affirmed.

                                                Richard L. Puglisi
                                      United States Magistrate Judge